UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ZHONG HUA XU,

     Petitioner,

  v.

PHILIP RHONEY, in his official capacity
as Field Office Director in charge of
Buffalo Federal Detention Facility, et al.,[1]

    Respondents.

**DECISION AND ORDER**

1:26-CV-00364 EAW

---

## **INTRODUCTION**

  Petitioner Zhong Hua Xu ("Petitioner"), a civil immigration detainee currently held at the Buffalo Federal Detention Facility in Batavia, New York, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Dkt. 1). Petitioner claims that his removal from the United States is not reasonably foreseeable, and therefore his continued detention without a bond hearing violates his Fifth Amendment liberty interest. (*Id.* at ¶¶ 62-69). For the reasons below, the Court grants Respondents' motion to dismiss (Dkt. 9) pursuant to Fed. R. Civ. P. 12(b)(6) and dismisses the petition without prejudice.

---

[1]  Philip Rhoney is the Acting Field Office Director of the Buffalo Field Office and is substituted in place of Tammy Marich pursuant to Federal Rule of Civil Procedure 25(d). In addition, Markwayne Mullin is the Secretary of the Department of Homeland Security and is substituted in place of Kristi Noem and David Venturella is the Acting Director of ICE and is substituted in place of Todd Lyons. The Clerk of Court is directed to update the docket to reflect these substitutions.

## BACKGROUND

Petitioner is a citizen and national of the People's Republic of China. (Dkt. 1 at ¶ 5; Dkt. 9-2 at ¶ 5). On October 18, 1996, Petitioner was issued an Order to Show Cause and Notice of Hearing which alleged that he entered the United States on or about February 28, 1992, without a valid entry document. (Dkt. 9-2 at ¶ 6). On June 3, 1998, a final order of removal was issued directing that Petitioner be deported to the People's Republic of China. (Dkt. 1 at ¶ 29; Dkt. 9-2 at ¶ 7). An immigration judge denied Petitioner's motion to reopen on March 29, 2011, and on February 26, 2013, the Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal of the denial of his motion to reopen. (Dkt. 9-2 at ¶¶ 8, 9).

Petitioner was detained by ICE on September 7, 2025. (Dkt. 1 at ¶ 14; Dkt. 9-2 at ¶ 10). Shortly thereafter, Petitioner's son filed a Form I-130, Petition for Alien Relative, on Petitioner's behalf. (Dkt. 1 at ¶ 17). Petitioner also filed a Form 1-485, Application to Adjust Status, or a green card application. (*Id.* at ¶ 18). Part of the Application to Adjust Status process requires appearance at a biometrics appointment which Petitioner alleges Respondents prevented him from attending. (*Id.* at ¶¶ 20-28). Respondents allege that Petitioner's biometrics were received on or about March 12, 2026. (Dkt. 9-2 at ¶ 12).

On March 2, 2026, Petitioner filed the instant § 2241 petition. (Dkt. 1). On March 3, 2026, the Court entered a Text Order directing the parties to propose a briefing schedule and temporarily enjoining Respondents from transferring Petitioner outside the Western District of New York pending a resolution of the matters in the petition. (Dkt. 3). On March 17, 2026, Respondents filed a motion to dissolve the temporary restraining order and dismiss the petition, and requested expedited consideration of the relief sought. (Dkt.

9).  After hearing from Petitioner (Dkt. 12), the Court granted the portion of Respondents' motion seeking to vacate the temporary restraining order (Dkt. 13).  Petitioner filed a response to Respondents' motion to dismiss on March 26, 2026. (Dkt. 14).

Respondents obtained a travel document from the Chinese government on March 19, 2026, and Petitioner was transferred to Louisiana in preparation for his removal to China on a March 24, 2026 flight.  (Dkt 9-2 at ¶¶ 15, 16; Dkt. 24).  But due to limited seating capacity on the flight, Plaintiff was not given a seat on the flight, was returned to BFDF, and scheduled for another flight on April 23, 2026.  (Dkt. 23; Dkt. 24).

On April 13, 2026, Petitioner filed a motion to reopen his removal proceedings and asked this Court to stay his removal (Dkt. 19), which the Court denied on April 14, 2026, for lack of jurisdiction (Dkt. 20).  Additional status reports from the parties reflect that Petitioner's motion to reopen was rejected by the immigration court on June 24, 2026. (Dkt. 25-1).  Petitioner then refiled the motion with the BIA on June 30, 2026, which remains pending, and has the effect of automatically staying Petitioner's removal efforts. (Dkt. 26).

## DISCUSSION

### I.    Jurisdiction

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484

(1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).

In the immigration context, "recent Second Circuit precedent firmly establishes that [a district] [c]ourt can hear and decide Section 2241 habeas petitions brought by individuals in immigration detention, so long as the petitions challenge the constitutionality of the petitioners' detention rather than the underlying removal proceedings." *L.G.M. v. LaRocco*, 788 F. Supp. 3d 401, 404 (E.D.N.Y. 2025) (quoting *Ozturk v. Hyde*, 136 F.4th 382, 399-400 (2d Cir. 2025) (finding petitioner's First and Fifth Amendment challenges to her detention distinct from challenges to her removal proceedings and therefore properly within the district court's jurisdiction (collecting cases); *Mahdawi v. Trump*, 136 F.4th 443, 452 (2d Cir. 2025) (same)).

Petitioner's § 2241 petition challenges the constitutionality of his continued detention in the government's custody. Therefore, the Court has subject matter jurisdiction over this matter.

## II.    Due Process Claim

Petitioner contends that his ongoing detention without a bond hearing or release under conditions of supervision violates his due process rights under the Fifth Amendment.[2]

---

[2]    In his petition and in connection with his request for immediate release, Petitioner also raises claims of inadequate medical treatment and challenges Respondents' failure to permit him to attend a biometric appointment and other medical appointments. (Dkt. 1; Dkt. 7; Dkt. 27). In the first instance, Petitioner's claim regarding his biometrics appointment appears to be moot. (Dkt. 9-2 at ¶¶ 11, 12).

Because Petitioner is subject to a final removal order, it is undisputed that his detention arises pursuant to 8 U.S.C. § 1231, which "authorizes detention 'when an alien is ordered removed' and enters the 'removal period,' which begins on '[t]he date the order of removal becomes administratively final.'" *Johnson v. Guzman Chavez*, 594 U.S. 523, 533 (2021) (alteration in original) (quoting 8 U.S.C. §§ 1231(a)(1)(A)-(B)).

---

To the extent that Plaintiff alleges inadequate medical treatment, the allegations do not rise to the level of a constitutional violation. In order to sustain a Fifth Amendment deliberate indifference claim, a detainee must show "(1) the existence of a 'serious medical need,' and (2) that Respondents acted with deliberate indifference to such need." *Graterol Ruiz v. Trump*, No. 2:26-CV-00012, 2026 WL 483182, at *3 (D. Vt. Feb. 20, 2026) (citation modified)). "The serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain," and to establish deliberate indifference, "a detainee must prove 'that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to [the detainee's] health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Quintero v. Francis*, No. 25-CV-10107 (MKV), 2026 WL 265921, at *7 (S.D.N.Y. Feb. 2, 2026) (quoting *Charles v. Orange Cnty.*, 925 F.3d 73, 82, 85 (2d Cir. 2019) (citation modified))).

Petitioner contends that prior to detention, he was seeing a mental health provider who spoke Chinese but that at BFDF, he is only provided with an English-speaking health professional who utilizes a Chinese-speaking interpreter. (Dkt. 1 at ¶¶ 45, 53). Petitioner's allegations do not rise to the level of deliberate indifference. While Petitioner may prefer treatment from his own mental health providers or from one who speaks his native language, the law does not allow those preferences to manifest themselves into a constitutional violation.

Petitioner also contends that he receives regular medical treatment from medical providers for hepatitis B, fatty liver disease, liver hemangioma, and anemia, and seeks permission to attend scheduled medical appointments. (Dkt. 27). Respondents note that transportation to medical appointments can be accommodated through an established process with proper notice and that Petitioner has not availed himself of those processes. These allegations too do not amount to a cognizable claim for inadequate medical treatment. *Graterol Ruiz*, 2026 WL 483182, at *4 ("Courts grant prison officials wide discretion in treating detainees and treatment plans by medical providers are given a presumption of correctness. . . . Even if Mr. Graterol Ruiz would prefer his treatment at the Boston Medical Center, the Department of Corrections has wide discretion in determining where and how he receives medical treatment." (citation modified)).

Under § 1231, there are three relevant periods.  First, § 1231(2)(A) provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days" during which time "the Attorney General shall detain the alien."  *Id.*  "Critically, the statutory text uses 'shall,' denoting mandatory detention."  *Neilova*, 812 F. Supp. 3d at 839 (citation omitted).

The 90-day removal period "begins on the latest of" three dates, specifically:

(i)     The date the order of removal becomes administratively final.

(ii)    If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii)   If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).  Once the 90-day mandatory detention period ends, § 1231(a)(3) provides that "[i]f the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."  8 U.S.C. § 1231(a)(3).

If the Government continues to detain the noncitizen beyond the removal period pursuant to § 1231(a)(6), such detention is "limit[ed]. . . to a period reasonably necessary to bring about that alien's removal from the United States," *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001), and is deemed "presumptively reasonable" for a period of six months, *see id.* at 701.  If, after this six-month period, the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  *Id.*

Here, there is no question that the presumptively reasonable six month period under *Zadvydas* has expired, and Petitioner has been held in custody since September 7, 2025— i.e., over 10 months. However, this does not end the inquiry, as "the mere passage of time beyond the six-month presumptively reasonable period does not satisfy [the petitioner's] burden under *Zadvydas*." *Lorenzo v. Barr*, No. 20-cv-1372 (JLS), 2021 WL 84283, at *6 (W.D.N.Y. Jan. 11, 2021) (citation modified). Rather, in addition, the Petitioner must provide good reason to believe that his removal is unlikely in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701.

"In analyzing the likelihood of removal, courts consider a variety of factors, including the existence of a repatriation agreement with the target country, the target country's prior record of accepting removed noncitizens, and specific assurances from the target country regarding its willingness to accept a noncitizen." *Yousif Al Nassar v. Rhoney*, No. 26-CV-311-RCW, 2026 WL 1800891, at *6 (W.D.N.Y. June 23, 2026) (quoting *Dong v. Charles*, No. 26-cv-85-LJV, 2026 WL 1473790, at *4 (W.D.N.Y. May 26, 2026)). In support of this argument, Petitioner alleges that his March 19, 2026 travel document is expired and there is no current valid travel document authorizing his removal. (Dkt. 24). He also argues that there is no indication when his motion to reopen will be resolved and that "[g]iven the absence of a valid travel document, the pending Motion to Reopen, and the likelihood of lengthy appellate proceedings, Petitioner's removal is not reasonably foreseeable." (*Id.* at 3).

The Court is not persuaded. Petitioner was about to be removed to China on March 24, 2026, but he was not able to secure a seat on the plane because of its size limitations;

then, he was scheduled to be removed on April 23, 2026, but the motion to reopen automatically operated to stop those efforts. The motion to reopen has now been denied by the immigration court, and Petitioner's pursuit of that relief before the BIA is the only apparent restriction on his removal. Moreover, while the Court's role is not to resolve the merits of Petitioner's motion to reopen, Respondents have presented a credible argument that Petitioner's current stance on the motion to reopen contradicts the prior position when initially defending against the efforts to remove him. (*Compare* Dkt. 21-1 (2011 Motion to Reopen); Dkt. 21-2 (Petitioner's 2011 Affidavit); Dkt. 19-1 (2026 Second Motion to Reopen)). Furthermore, Respondents have come forward with evidence that travel documents will be obtained as soon as the automatic stay of removal is lifted—just as they were previously.

Under these circumstances, particularly when it is the automatic stay resulting from Petitioner's own eleventh hour filings that have delayed his removal, the Court is not convinced that Petitioner has established that there is no significant likelihood of his removal in the reasonably foreseeable future, and even if Petitioner could make that showing, Respondents have rebutted that showing. *See, e.g.*, *Guangzu Zheng v. Decker*, 618 F. App'x 26, 28 (2d Cir. 2015) ("[T]he Government has been prevented from removing Zheng by the BIA's stay of removal (sought by Zheng) and by its own forbearance policy (also resulting from Zheng's pursuit of an additional stay."); *Abimbola v. Ridge*, 181 F. App'x 97, 99 (2d Cir. 2006) ("The District Court and the Government both correctly identify the real reason for Abimbola's lengthy detention: Abimbola's consistent pattern of seeking and/or receiving numerous judicial stays and filing his numerous petitions for

reconsideration and appeals. . . . As the District Court noted, a self-inflicted wound should not establish grounds for Abimbola's *Zadvydas* claim."); *Bailey v. Marich*, No. 26-CV-250-RCW, 2026 WL 1703737, at *3 (W.D.N.Y. June 12, 2026) ("[A] discrete administrative stay pending [petitioner's] own motion to reopen is not the kind of indeterminate obstacle that *Zadvydas* addresses."); *Turcios v. Mullin*, No. 1:25-CV-8150-MKV, 2026 WL 1180124, at *13 (S.D.N.Y. Apr. 30, 2026) ("Aside from the stay he requested and obtained, Petitioner has not come forward with any 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" (quoting *Zadvydas*, 533 U.S. at 701)); *Portillo v. Decker*, No. 21 CIV. 9506 (PAE), 2022 WL 826941, at *5 (S.D.N.Y. Mar. 18, 2022) ("For obvious reasons, a noncitizen's use of the American judicial process, to the extent it delays removal, does not warrant release under *Zadvydas*.").

Accordingly, Respondents' motion to dismiss the petition on this ground is granted. That said, because Petitioner's detention may not continue indefinitely, the dismissal is without prejudice to potential renewal of the requested relief at some point in the future in the event that "removal can no longer be expected in the reasonably foreseeable future." *Bailey*, 2026 WL 1703737, at *4.

## **CONCLUSION**

For the reasons discussed above, the Court grants Respondents' motion to dismiss the petition pursuant to Fed. R. Civ. P. 12(b)(6) without prejudice, and the Clerk of Court is directed to close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      July 20, 2026
              Rochester, New York